JAJ:SDD
F.#2010R00844

**M-1, 779**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

ANNA FERMANOVA,

              Defendant.

- - - - - - - - - - - - - - - - -X

**TO BE FILED UNDER SEAL**

Affidavit in Support of
<u>Arrest Warrant</u>

(T. 22, U.S.C., § 2778)

EASTERN DISTRICT OF NEW YORK, SS:

      DAVID MONDANARO, being duly sworn, deposes and says that he is a Special Agent with Immigration and Customs Enforcement ("ICE"), duly appointed according to law and acting as such.

      Upon information and belief, on or about March 1, 2010, within the Eastern District of New York and elsewhere, the defendant ANNA FERMANOVA, together with others, did knowingly and intentionally attempt to export from the United States to Russia defense articles on the United States Munitions List, to wit: one Raptor Night Vision Weapons Sight, Model M644-4X and two Advanced Rifle Sights, Model D-740-3A, without first having obtained a license from the Department of State, Directorate of Defense

2

Trade Controls, in violation of Title 22, United States Code, Section 2778.

(Title 22, United States Code, Section 2778(c)).

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with ICE since October of 2008. I am currently assigned to the Counter-Proliferation Investigation section of the Deputy Special-Agent-in-Charge Office at John F. Kennedy International Airport ("JFK") in Jamaica, New York. My duties include the investigation and prosecution of violations pertaining to the export of licensable commodities, such as munitions. As a Special Agent with ICE, I have participated in numerous investigations into violations of the Arms Export Control Act ("AECA"), during the course of which I have conducted or participated in surveillance, execution of search warrants, debriefings of informants, and reviews of documents and taped conversations.

2. Pursuant to Title 22, United States Code, Section 2778(b)(2), I know that defense articles designated by the President of the United States on the United States Munitions

---

[1] The information contained in this affidavit is based upon my conversations with various law enforcement agents, and others, as well as my personal observations and knowledge. Where my statements and statements of others are related herein, they are related in substance and in part. Because the purpose of this affidavit is merely to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

3

List ("USML") may not be exported without a license from the United States Department of State, Directorate of Defense Trade Controls ("DDTC"). In addition, pursuant to and 22 C.F.R. Section 120, et seq., I know that the DDTC is responsible for the administration of the International Traffic in Arms Regulations ("ITAR") as they relate to the manufacture, brokering, import, export, and transfer of defense articles and defense services.

3. ICE is conducting an investigation into the activities of ANNA FERMANOVA and others for attempting to export USML commodities from the United States to Russia, without possessing the requisite DDTC export licenses.

4. In connection with this investigation, on or about February 23, 2010, ICE received information from a confidential source ("CS"), who has proven reliable in the past, that ANNA FERMANOVA was attempting to acquire a Raptor 4X Night Vision Weapons Sight ("Raptor 4X"). The CS also indicated that FERMANOVA had previously acquired a similar night vision scope.

5. Based on my training and experience, I know that a Raptor 4X is a "generation 3" weapons-mounted night vision sighting device that allows a user to acquire and engage a target in low light conditions. The Raptor 4X is designed to be affixed to a rifle, such as the M4 assault rifle.

6. On or about February 26, 2010, based on a review of outbound flight manifests, ICE learned that ANNA FERMANOVA was

4

scheduled to depart the United States on March 1, 2010 aboard Delta flight 30 from JFK to Moscow.

7. Based on a further review of flight records, ICE agents learned that FERMANOVA flew to JFK on March 1, 2010, with a connecting flight to Russia. FERMANOVA checked two pieces of luggage. Customs and Border Protection ("CBP") officers intercepted FERMANOVA's luggage and performed an outbound border search for contraband.

8. During the examination of FERMANOVA's luggage, CBP discovered three night vision devices, including one Raptor 4X weapons sight and two Night Optics USA type D740-3A weapons sights, which are also generation 3 night vision devices.

9. After learning from CBP that FERMANOVA's luggage contained night vision weapons sights, ICE agents approached FERMANOVA as she was preparing to board her flight to Russia and identified themselves. The agents explained to FERMANOVA that she was not under arrest or in custody, and that she would be able to board her flight. The agents further explained that three devices had been found in her luggage, and that they wanted to learn more about them.

10. FERMANOVA stated that she had purchased the scopes online, and that one of the scopes was a "Raptor." FERMANOVA stated that she could not recall the model name of the other two devices. FERMANOVA further stated that the scopes were

"generation 3 night vision" devices. FERMANOVA acknowledged that the scopes belonged to her. When ICE agents asked FERMANOVA if she was aware of the United States export regulations that apply to such items, and asked her whether she had been informed of such regulations when she purchased the items, FERMANOVA stated that she "signed something about that," but was "not really sure what she was signing" when she did so.

11. ICE agents further asked FERMANOVA why there were no visible identification stickers or markings on any of the night vision devices, and why some identification numbers had been covered with black marker pen. FERMANOVA replied that she had removed and otherwise concealed the identification markings "so they would be less noticeable." When agents asked if this was done so that she could get them out of the United States without a license, FERMANOVA replied, "yes." She further claimed that she was taking the items to her husband, a resident of Moscow, Russia.

12. Following the conversation between ICE agents and FERMANOVA, agents seized the three night vision devices and provided FERMANOVA with a receipt. FERMANOVA then boarded her flight and departed the United States. I subsequently obtained copies of "ITAR Acknowledgment Compliance" forms, dated February 9, 2010 and February 25, 2010, which reference purchase orders for two of the night vision devices seized from FERMANOVA's

6

luggage. The forms state that the purchased items are subject to United States government export control regulations, and appear to bear FEMRANOVA's signature. Specifically, the ITAR forms state, <u>inter alia</u>:

> I understand that it is unlawful to export or attempt to export or otherwise transfer or sell any hardware or technical data or furnish any service to any foreign person whether abroad or in the United States (U.S.) for which a license or written approval of the U.S. Government is required without first obtaining the required license or written approval from the department of the U.S. Government having jurisdiction.
>
>       \*          \*          \*
>
> I understand that I am responsible for compliance with any and all U.S. Government export controls and regulations and that if I violate them it could result upon conviction in severe criminal and civil penalties.

The forms appear to have been signed by FERMANOVA on February 9th, 2010 and February 25th, 2010, respectively.

      13. According to the DDTC, each of the three night vision devices, to wit: the Raptor Night Vision Weapons Sight, Model M644-4X and the two Advanced Rifle Sights, Model D-740-3A, discovered in FERMANOVA's luggage on March 1, 2010 are USML articles, as defined under category 7XII(c), and that such items require a license to be exported outside of the United States. <u>See</u> 22 C.F.R. § 121.1. In addition, I have learned that FERMANOVA had no such license from the Department of State, DDTC

7

to export the night vision devices she had in her luggage on a flight bound for Moscow, Russia.

14. Based on my review of ICE databases, I have learned that FERMANOVA arrived back in the United States on or about July 1, 2010.

WHEREFORE, your deponent respectfully requests that an arrest warrant issue for the defendant ANNA FERMANOVA so that she may be dealt with according to law. Due to the risk of flight of the defendant and/or the destruction of evidence, I further request that the arrest warrant be issued under seal.

DAVID MONDANARO
Special Agent Immigration and
Customs Enforcement

Sworn to before me this
9th day of July, 2010

E